J-A23005-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ARTHUR HOSWAY LOGAN, JR., | : | |
| | : | |
| Appellant | : | No. 823 WDA 2013 |

Appeal from the Judgment of Sentence April 15, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0002509-2012

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED OCTOBER 10, 2014**

Arthur Hosway Logan, Jr. ("Logan") appeals from the judgment of sentence entered following his convictions of aggravated assault, simple assault, burglary, conspiracy, criminal mischief and defiant trespass.[1] Following our review, we conclude that the trial court denied Logan's constitutional right to present witnesses in his defense.  Accordingly, we vacate the judgment of sentence and remand for a new trial.

Because our disposition rests on the trial court's unusual, and frankly improper, conduct during trial, we need not belabor the facts underlying the crimes of which Logan was convicted.  It is sufficient to say that this case has its genesis in a long-simmering dispute between neighbors.  Logan and Cherie Kelly ("Victim") live in the same apartment complex and although

---

[1] 18 Pa.C.S.A. §§ 2702, 2701, 3502, 903, 3304, 3503.

they once shared a cordial relationship, it had deteriorated to the point on incivility by the time the events underlying this appeal occurred. On January 24, 2012, Logan's young daughter returned home from school with bloody knees and told Logan that Victim's son caused her injuries. Logan, his girlfriend, her friend, and Walter Davis ("Walter") went to Victim's apartment. Victim would not open the door when they knocked.

At trial, Victim testified that Logan and his friends broke down the door to her apartment. According to her, Logan punched her daughter, hit Victim once with a hammer and then he and Walter beat her with their fists to the point that she suffered multiple injuries including a concussion and fractured orbital bone. N.T., 4/15/13, at 13-20. She also testified that as a result of these injuries, she continues to suffer from dizzy spells, migraine headaches, double vision, panic attacks and post traumatic stress disorder. *Id.* at 20-23. Victim's daughter also testified as to the events that occurred in her home that day, in a manner largely consistent with Victim's testimony. *See id.* at 36-41.

Logan testified that he and his friends knocked on Victim's door, and that she responded by cursing at them. *Id.* at 53. Logan also testified that out of frustration he kicked the door open and tried to enter the apartment, but Victim's daughter immediately tried to hit him with a hammer. *Id.* at 54-55. Logan further testified that he pushed the hammer out of the daughter's hands and Victim moved toward the hammer as if she were going

to pick it up. When the victim moved to pick up the hammer, he struck her once in order to prevent her from doing so, and that this was the extent of his assault on the victim. N.T., 4/15/13, at 55-57.

Prior to the commencement of trial, Logan had not met with his court-appointed counsel nor did he know that he could call character witnesses to testify to his reputation in the community as part of his defense. *Id.* at 66. When advised of this right, Logan immediately expressed his desire to do so. Logan first expressed his desire to call his co-defendants to testify to his reputation in the community for peacefulness, at which time the trial court informed him that they would probably not want to take the stand and that their testimony "couldn't really affect me a lot" because they participated in the same incident and were charged with related crimes. *Id.* at 66-67. Still intent on calling a character witness to support his defense, Logan attempted to call his mother, who was present, but the trial court informed Logan that she is "not the most powerful character witness." *Id.* at 70. Having rejected Logan's proposed character witnesses as incredible, the trial court expounded on the kinds of witnesses it would find appropriate and credible as to the issue of Logan's reputation in the community. *Id.* ("That wouldn't be as powerful as someone who was just, you know, a guy at the corner store, the lady in bible school, I mean someone who is just a regular person in the community of standing that would speak to what kind of person you are … ."). Despite knowing that Logan was intent on calling

character witnesses in support of his defense and having deemed his proposed witnesses incredible, when Logan asked for a continuance so that he could find a character witness, the trial court denied his request. The trial court then found Logan guilty of the above-mentioned offenses and sentenced him to 11½ to 23 months of incarceration, followed by three years of probation.

This timely appeal followed, in which Logan presents two issues for our review:

> 1. Did the trial court err when it declined to grant [] Logan a brief continuance and allow him to exercise his constitutional right to present a good character witness, a right he did not know existed until just prior to closing arguments, thus violating his right to due process and fair trial?
>
> 2. Did the trial court abuse its discretion when it denied [] Logan's request for a continuance to get a good character witness when such a witness was necessary to strengthen his case, essential to his defense, could be easily procured, and likely to be produced?

Appellant's Brief at 5.

In his first issue, Logan argues that by denying his request for a continuance, the trial court denied him of his constitutional right to present witnesses on his behalf. "As this is an issue involving a constitutional right, it is a question of law; thus, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Baldwin***, 58 A.3d 754, 762 (Pa. 2012).

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." ***Commonwealth v. McKenzie***, 581 A.2d 655, 657 (Pa. Super. 1990) (citing ***Washington v. Texas***, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, (1967)); ***see also Commonwealth v. Douris***, 766 A.2d 1276, 1279 (Pa. Super. 2001) ("A defendant has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.").

As explained above, Logan sought to call witnesses to establish his good character. Character evidence is substantive evidence that may provide the majority, or even the entirety, of the accused's defense. The Supreme Court of Pennsylvania eloquently explained the purpose, function and admissibility of such evidence long ago:

> Evidence of good character is always admissible for the defendant in a criminal case. It is to be weighed and considered in connection with all the other evidence in the cause. It may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. There [may] be cases in which, owing to the peculiar circumstances in which a man is placed, evidence of good character may be all he can offer in answer to a charge of crime. Of what avail is a good character, which a man may have been a life-time in acquiring, if it is to benefit him nothing in his hour of peril?

*Commonwealth v. Cleary*, 19 A. 1017, 1018 (Pa. 1890); *see also Commonwealth v. Weiss,* 606 A.2d 439, 442 (Pa. 1992) ("Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty.").

Although Logan was explicit about his desire to call character witnesses and made multiple attempts to do so, the trial court announced that it would not find them credible. By prematurely announcing that it found Logan's proposed witnesses incredible, the trial court dissuaded him from calling them on his behalf. Logan then sought a continuance so that he could find other character witnesses. By denying Logan's request, the trial court deprived him of the opportunity to find other witnesses to testify as part of his defense. The combination of these actions effectively extinguished Logan's right to present witnesses to establish his defense. This is particularly egregious in light of the fact that such witnesses were vital to Logan's case, as such testimony was evidence that would corroborate his account of the incident – *i.e.*, that he hit the victim once only because he was trying to stop the victim from hitting him with a hammer. That is to say, character witnesses that would testify that Logan has a reputation in the community for peacefulness could provide the reasonable

doubt needed to avoid a conviction of aggravated assault.[2]  *Cleary*, 19 A. at 1018; *Weiss,* 606 A.2d at 442.  To deny Logan this right is clear and palpable error by the trial court.[3]   As such, we vacate the judgment of sentence and remand for a new trial.

In connection with this issue, we pause to note that the trial court's pronouncement that any amount of character evidence would not sway its credibility determination was fundamentally and egregiously improper.  This statement is in direct contravention of our basic principles of due process and the right to a fair trial.

> [A]ppellant, as a defendant in a criminal action, was entitled to the usual safeguards, *and to have all the evidence considered by the trial judge before his guilt or innocence was determined*. The presumption of innocence of the accused continued in his favor throughout the entire case

---

[2] This is because a conviction of aggravated assault under the section with which Logan was charged requires proof of the causing of serious bodily injury to another "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."  18 Pa.C.S.A. § 2702(a)(1). This requires a determination of whether "the circumstances surrounding the attack support the conclusion that [Logan] intentionally or knowingly caused such injuries or if he proceeded in such a manner that manifested an extreme indifference to the value of [the victim's] life." *Commonwealth v. Burton*, 2 A.3d 598, 603 (Pa. Super. 2010).  Thus, testimony from character witnesses regarding Logan's reputation for peacefulness in the community would bolster Logan's account of what occurred, which, if believed by the trial court, would preclude a finding that the single strike was administered with the requisite intent.

[3] The Commonwealth apparently recognizes the trial court's error in this regard; it puts forth what can best be called a lukewarm effort at defending its position, classifying the trial court's actions as "somewhat unusual" and "defer[ring] to the decision of this Court" rather than defending the trial court's actions as proper.  *See* Appellee's Brief at 3, 19.

> (*see* [*Commonwealth*] *v. Barrish*, [] 146 A. 553 [Pa. 1929]), and whether it was overcome was to be determined by the trial judge *after the introduction of all the evidence*. The testimony of the last witness in a criminal case may be enough to raise a reasonable doubt as to a defendant's guilt.

*Commonwealth v. Richman*, 1 A.2d 578, 579 (Pa. Super. 1938) (emphasis added). The trial court's prejudgment and declaration of Logan's guilt eviscerated his right to a presumption of innocence until after the presentation of all of the evidence.

In his remaining issue, Logan argues that the trial court abused its discretion in not granting his request for a continuance based on the five-prong test contained in *Commonwealth v. Bozic*, 997 A.2d 1211, 1225 (Pa. Super. 2010).[4] In light of our resolution of Logan's first issue, we need not address the merits of this claim; however, we mention the nature of Logan's second claim simply to note that we cannot elevate what occurred in this case to a legal analysis under *Bozic*. Commonly, a request for a

---

4  This test provides that when reviewing a trial court's refusal to grant a request for a continuance in order to procure a witness, we must consider the following factors:

> (1) the necessity of the witness to strengthen the defendant's case;
> (2) the essentiality of the witness to the defendant's defense;
> (3) the diligence exercised to procure his or her presence at trial;
> (4) the facts to which he or she could testify; and
> (5) the likelihood that he or she could be produced at court if a continuance were granted.

*Commonwealth v. Bozic*, 997 A.2d 1211, 1225 (Pa. Super. 2010).

continuance in order to procure a witness is made when an unforeseen circumstance has arisen that delays or forecloses an anticipated witness's presence at trial. This case presents a much more serious concern; namely, the denial of Logan's right to call character witnesses on his behalf. The ***Bozic*** framework does not fit the bizarre circumstances of this case.

In summary, the trial court's prejudgment of the witnesses Logan sought to call, coupled with his refusal to allow him to find other witnesses, was the functional equivalent of refusing to allow Logan to call witnesses on his behalf. Had Logan been given the opportunity to present witnesses of the ilk that the trial court self-ordained as credible, the trial court would have had additional evidence upon which to make its decision, as factfinder, as to whether Logan possessed the *mens rea* required to be convicted of aggravated assault. To conclude otherwise renders meaningless the notion of a fair trial.

Judgment of sentence vacated. Case remanded for further proceedings.[5] Jurisdiction relinquished.

Musmanno, J. joins the Memorandum.

---

[5] This Court cannot require that a case we remand for further proceedings be assigned to a different judge nor can we predetermine a trial judge's future ability to fairly and impartially preside over a case. Thus, it is for Logan and his counsel to decide whether a recusal request is warranted based on the trial court's improper comments in the first trial. We also note our deep concern over Logan's counsel's abject failure to apprise Logan of his right to call character witnesses. As troubling, counsel stood by mutely as Logan pled his case to the trial court about his own desire to call character witnesses.

Allen, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014