J-S34008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JEROD ALAN GREEN :
:
Appellant : No. 1315 WDA 2017

Appeal from the PCRA Order June 30, 2017
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000127-2012

BEFORE: BOWES, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 29, 2018**

Jerod Alan Green appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

On the night of February 17, 2012, Appellant was involved in an accident in Monongalia County, West Virginia, and fled the scene. The police broadcast a description of Appellant's vehicle and, upon sighting it, a West Virginia police officer effected a traffic stop. When approached by officers, Appellant admitted he had been involved in the accident and that he did not stop at the scene because he had four previous DUI convictions. When police asked Appellant to step out of his vehicle, he sped away, causing a police pursuit. As the chase continued, Green's vehicle traveled at speeds from twenty to sixty miles per hour. After avoiding rolling and stationary police road blocks, the pursuit continued into Pennsylvania, and toward Interstate 79 ("I-79").

_____
* Retired Senior Judge assigned to the Superior Court.

Sergeant Michael May of the Monongalia County Sheriff's Department was operating his marked patrol car, with flashing lights, around the center median of I-79, along the left side of the northbound lanes. At an estimated speed of 98 miles per hour, Appellant entered the on-ramp to I-79, and when he reached the top of the ramp, he drove from the right side of the road to the left side of the road, diagonally across all lanes, straight into Sergeant May's police vehicle. Sergeant May died as a result of brain injuries sustained in the crash. Following the collision, Appellant was taken to the hospital to obtain a blood sample, and test results indicated that his blood alcohol content ("BAC") was 0.189%.

Appellant was arrested and charged with numerous offenses, including first-degree murder. In December 2012, Appellant was convicted by a jury of third-degree murder, homicide by vehicle, homicide by vehicle while driving under the influence, fleeing and attempting to elude a police officer, and related offenses. On February 25, 2013, the trial court imposed an aggregate sentence of twenty-five to fifty years incarceration. This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal. *Commonwealth v. Green*, 106 A.3d 156 (Pa.Super. 2014) (unpublished memorandum), *appeal denied*, 110 A.3d 996 (Pa. 2015).

On March 28, 2016, Appellant timely filed the instant PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition. The PCRA court conducted an evidentiary hearing, and thereafter entered an order

denying Appellant's PCRA petition.[1]  Appellant filed a timely notice of appeal,

and a court-ordered Pa.R.A.P. 1925(b) statement of issues complained of on

appeal.  *In lieu* of entering a Pa.R.A.P. 1925(a) opinion, the PCRA court relied

on its opinions filed on April 19, 2017, and May 4, 2017.

Appellant raises the following issues for our review:

1. Whether the trial court erred in finding that the Appellant was not entitled to a new trial under the law announced by the United States Supreme Court, in **Birchfield v. North Dakota**[, 136 S. Ct. 2160 (2016)].

2. Whether the [PCRA] court erred in denying the Appellant's [PCRA] petition after a hearing.

3. Whether the trial court erred in finding that trial counsel was not ineffective for failing to investigate and present character evidence on behalf of the Appellant.

4. Whether the trial court erred in finding that trial counsel was not ineffective for failing to object to prejudicial and inflammatory evidence presented by the Commonwealth, including the hearsay testimony of Franklin May, a photograph of the Appellant, and autopsy photos. . . . In the alternative, the [PCRA] court erred in finding that trial counsel was not ineffective for failing to request limiting instructions or to request that such evidence be stricken, after the fact.

5. Whether the [PCRA] court erred in finding that appellate counsel was not ineffective for failing to preserve issues on appeal.

_____

[1] On April 19, 2017, the PCRA court entered an order and opinion denying Appellant's PCRA petition.  On May 4, 2017, the PCRA court entered an amended order and opinion denying Appellant's PCRA petition.  Thereafter, on June 30, 2017, the PCRA court entered a further order dismissing Appellant's PCRA petition, which appeared to treat its May 4, 2017 opinion and order as if it had been a notice of dismissal under Pa.R.Crim.P. 907.  We deem the June 30, 2017 order to be the final, appealable order for purposes of this appeal.

Appellant's brief at 8 (unnecessary capitalization omitted, issues reordered for ease of disposition).

Our standard of review of an appeal from the dismissal of a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012) (internal citations omitted).

In his first two issues,[2] Appellant contends that the PCRA court erred by ruling that *Birchfield* did not retroactively apply to grant him relief in the form of a new trial based on the failure by police to obtain a warrant for his blood draw. In *Birchfield*, the United States Supreme Court held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *See Birchfield*, *supra* at 2185-86. Appellant

---

[2] Despite the phrasing of Appellant's second issue, his argument therein is limited to his claim that *Birchfield* should apply retroactively to his conviction. As this is the same argument raised in his first issue, we will address them together.

- 4 -

acknowledges that **Birchfield** was decided after his judgment of sentence became final. He further acknowledges the general rule that new procedural or constitutional rules announced by the High Court are not to be applied retroactively under **Teague v. Lane**, 489 U.S. 288 (1989) (plurality). Nevertheless, Appellant argues that **Birchfield** falls within the first exception to **Teague** for a new rule that places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe. Appellant's brief at 22-23. In the alternative, Appellant claims that **Birchfield** falls within the second exception to **Teague** for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. **Id**. at 24. Appellant claims that, because his blood draw would have been inadmissible under **Birchfield**, the jury's verdict was tainted by evidence obtained in violation of his constitutional rights.

**Birchfield** was decided on June 23, 2016. However, "a new rule of law does not automatically render final, pre-existing sentences illegal." **Commonwealth v. Washington**, 142 A.3d 810, 814 (Pa. 2016). Under the **Teague** framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review. **See Commonwealth v. Olson**, 179 A.3d 1134, 1139 (Pa.Super.

2018), *appeal granted*, 2018 Pa. LEXIS 4068 (Pa. Aug. 7, 2018).[3]  In **Olson**, this Court considered the retroactivity of **Birchfield** under a **Teague** analysis and concluded that **Birchfield** does not constitute a new substantive rule and does not apply retroactively in Pennsylvania to cases pending on collateral review.  **Id**.  More precisely, a petitioner cannot invoke **Birchfield** in a timely PCRA petition as a basis for relief.  **See id**.; **see also Commonwealth v. Wilcox**, 174 A.3d 670, 673 (Pa.Super. 2017).  Here, Appellant's case was not pending on direct review when **Birchfield** was announced.  Indeed, **Birchfield** was decided more than one year after Appellant's judgment of sentence became final.  Thus, Appellant's first two claims warrant no relief.

Appellant's remaining issues involve claims of ineffectiveness of counsel. When a petitioner alleges counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S. § 9543(a)(2)(ii).  Additionally, the petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's

---

[3] Although our Supreme Court has granted allowance of appeal in **Olson**, our holding remains binding precedent unless and until reversed by our Supreme Court.  **See Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa.Super. 2013) (noting that one panel of the Superior Court "is not empowered to overrule another panel of the Superior Court").

error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). "Counsel will not be deemed ineffective where the strategy employed had some reasonable basis designed to effectuate his or her client's interests." *Commonwealth v. Perry*, 128 A.3d 1285, 1290 (Pa.Super. 2015) (citation omitted).

In his third issue, Appellant claims that the PCRA court erred by ruling that trial counsel was not ineffective for failing to investigate and present character witnesses on his behalf, namely, Shelly Spitznogle, David Childs, Gale Green, or a representative of WVA Mental Health Unit, when requested to do so during trial or sentencing. Appellant's brief at 26. According to Appellant, Ms. Spitznogle, Mr. Childs, and Ms. Green, along with Appellant's parents, were made known to trial counsel and available to testify as character witnesses. *Id*. at 27-28. Appellant further asserts that trial counsel was presented with his medical records from the WVA Mental Health Unit, and a subpoena could have been issued for a representative of the facility to admit

the records. *Id*. Appellant contends that because "trial counsel's stated strategy was to show that [the victim] was at fault in causing the accident, failing to wear his seatbelt, and failing to follow proper procedure, testimony of the Appellant's character was paramount for the consideration of whether he acted with the malice required for third[-]degree murder." *Id*. at 28. Appellant contends that he suffered prejudice as a result of trial counsel's failure to investigate or call character witnesses.

In a criminal case, the defendant may offer character witnesses to testify as to that defendant's reputation in the community regarding a relevant character trait. *See* Pa.R.E. 404(a)(1); 405(a). Of course, the Commonwealth may attempt to impeach those witnesses. *Commonwealth v. Hoover*, 16 A.3d 1148, 1149, (Pa.Super. 2011). "[W]hen cross-examining character witnesses offered by the accused, the Commonwealth may test the witnesses' knowledge about specific instances of conduct of the accused where those instances are probative of the traits in question." *Id*. at 1149-50 (citing Pa.R.E. 405(a)); *see also Commonwealth v. Treiber*, 121 A.3d 435, 464 (Pa. 2015) (explaining that a character witness may be cross-examined regarding his or her knowledge of particular acts of the defendant's misconduct to test the accuracy of the witness's testimony). Accordingly, counsel's failure to call a character witness does not constitute *per se* ineffectiveness. *Commonwealth v. Cox*, 983 A.2d 666, 693 (Pa. 2009). Instead, counsel is ineffective for failing to introduce evidence of defendant's

good character only when his or her credibility as a witness is "of paramount importance." **Commonwealth v. Weiss**, 606 A.2d 439, 442 (Pa. 1992) ("In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility."). Generally, a defendant's character is only central to the truth-determining process when the Commonwealth bases its case principally on the credibility of its witnesses. **See, e.g.**, **Commonwealth v. Morgan**, 739 A.2d 1033, 1038 (Pa. 1999) (ruling that counsel's decision not to call character witnesses constituted reversible error where there was no medical evidence presented nor any eyewitnesses to the offenses, and the prosecution's case was based upon the credibility of witnesses).

In this case, Appellant's credibility was not of paramount importance, as the Commonwealth's case was not based principally on the credibility of its witnesses. **Weiss supra**; **Morgan supra**. Instead, the Commonwealth's case included numerous eyewitnesses to Appellant's criminal conduct and ample physical evidence of his guilt. Furthermore, the PCRA court determined that trial counsel had a reasonable basis for not calling character witnesses based on his concern that calling such witnesses would open the door to unfavorable testimony regarding Appellant. **See** PCRA Court Opinion, 5/4/17, at unnumbered 5; **see also** N.T. PCRA Hearing, 2/3/17, at 13 (where trial counsel testified that he initially considered character witnesses when he

thought the Commonwealth would pursue the death penalty; however, when the death penalty was not pursued, he decided not to call any character witnesses to avoid the risk of introduction of Appellant's prior record, including four prior DUIs, as well as speeding and reckless driving offenses). We agree with the PCRA court's determination. *See Commonwealth v. Peterkin*, 649 A.2d 121, 127 (Pa. 1994) (holding that "trial counsel's concern for damaging cross-examination was a reasonable basis not to pursue character or background witnesses because the witnesses would have been susceptible to cross-examination regarding the appellant's particular acts of misconduct" which did not involve arrest); *see also Commonwealth v. Van Horn*, 797 A.2d 983, 988 (Pa.Super. 2002) (holding that counsel has a reasonable strategic basis for not calling character witnesses if counsel believes the witnesses could be cross-examined regarding the defendant's prior criminal record).

The PCRA court further concluded that trial counsel was not ineffective for failing to call a representative from WVU Mental Health Unit to introduce Appellant's medical records because the records may have proven that Appellant was suicidal. *See* Trial Court Opinion, 5/4/17, at unnumbered 5 ("[T]he [c]ourt believes that this was well within the trial strategy not to call that mental health witness); *see also* N.T. PCRA Hearing, 2/3/17, at 17 (where trial counsel testified that, "[c]alling an individual about [Appellant's] mental status . . . would only help [the Commonwealth] out in that [Appellant]

was intoxicated and potentially suicidal . . . evidence I didn't want in front of a jury"). Trial counsel's decision not to call character witnesses or a representative from WVU Mental Health Unit had some reasonable basis, and was clearly designed to effectuate Appellant's interests. *See Perry*, *supra* at 1290. Therefore, as we discern no abuse of discretion, this claim warrants no relief.

Appellant's fourth issue is divided into three parts. In the first part, Appellant contends that the PCRA court erred in determining that trial counsel was not ineffective for failing to object to the hearsay testimony of Officer Franklin May (the brother of Sergeant May) or, in the alternative, for failing to request that the testimony be stricken from the record and a mistrial declared. Appellant's brief at 30. According to Appellant, the trial court ruled that Officer May was permitted to respond to the question "what happened," and to testify how he found out about his brother's death. *See* N.T. Trial, 12/10-13/12, at 41-42. The officer was thereafter permitted to testify that he asked Sherriff Kisner what happened, and the sheriff told him that "there was a DUI suspect that had fled and that he rammed [the victim's] cruiser . . . he didn't make it." *Id*. at 42. The officer was also asked "who notified your parents?" *Id*. In response, Officer May testified that he called his mother and requested that she and his father come home, and that, in response, his mother stated, "tell me what happened to [the victim], just tell me." *Id*. at 43. Finally, Officer May testified regarding statements Sergeant May made

- 11 -

prior to the collision regarding his plans for the upcoming weekend. *Id*. at 38.

While Appellant concedes that trial counsel made an anticipatory objection to the first question posed to Officer May on the basis that it called for a hearsay answer, he nevertheless claims that because "trial counsel failed to preserve the hearsay issues for appeal, . . . the review of the Superior Court [of Officer May's testimony] was based on relevance grounds. Appellant's brief at 30, 32. Contrary to Appellant's representation, no hearsay challenge to Officer May's testimony was raised in his direct appeal; nor was any hearsay challenge to Officer May's testimony deemed waived due to trial counsel's failure to preserve a hearsay objection. *See Commonwealth v. Green*, 106 A.3d 156 (Pa.Super. 2014) (unpublished memorandum at 14-16).[4] As trial counsel raised an anticipatory hearsay objection to the first question posed to Officer May, we question this aspect of Appellant's ineffectiveness claim. Moreover, although trial counsel failed to lodge any further hearsay objections to Officer May's testimony, the PCRA court credited trial counsel's explanation at the evidentiary hearing that he did not object to the hearsay statements

_____

[4] In rejecting Appellant's claim on direct appeal that Officer May's testimony was irrelevant, this Court credited the trial court's explanation that "this evidence was admissible . . . to counteract [defense] counsel's opening statement[,] which suggested that [Sergeant May's] actions that night were reckless and in fact the cause of his own death." *Commonwealth v. Green*, 106 A.3d 156 (Pa.Super. 2014) (unpublished memorandum at 15) (citing Trial Court Opinion, 2/26/14, at 2).

because he did "not want[] to appear to be badgering that particular witness, and that the evidence would have come in anyway [through eyewitness police officers and an accident reconstructionist]." PCRA Court Opinion, 5/4/17, at unnumbered 5; *see also* N.T. PCRA Hearing, 2/3/17, at 23-24, 31 (wherein trial counsel explained that "objecting every five seconds and essentially putting [Officer] May through more of an ordeal than is necessary . . . in my experience would turn the jury against [Appellant] and me"). Mindful that Officer May was the victim's brother and a fellow police officer, and that aggressively contesting his trial testimony might have angered the jury, trial counsel's decision had some reasonable basis, and was clearly designed to effectuate Appellant's interests. *See Perry*, *supra* at 1290. Furthermore, given the overwhelming evidence of Appellant's guilt, the record does not support a reasonable probability that the outcome of the proceedings would have been different if trial counsel had objected to the hearsay statements. *See Johnson*, *supra* at 1272. Therefore, as we discern no abuse of discretion, this claim warrants no relief.

Appellant next claims that the PCRA court erred in determining that trial counsel was not ineffective for failing to object to the admission of a color photograph depicting Appellant and his then-girlfriend, Holly Brotherton, smiling at the camera while dressed in Halloween costumes. In the photograph, Appellant is wearing a devil costume with horns on his head. Appellant argues that the photograph was not relevant, as it did not make any

fact of consequence more or less likely, and that it was unfairly prejudicial, since "[t]he only plausible reason for selecting this specific photograph, would be to enflame [*sic*] the passions of the jury by making the Appellant out to be the devil." Appellant's brief at 38.

At the evidentiary hearing, trial counsel explained that "[Appellant] had some issues . . . this would have been his fifth DUI, he was depressed, and really having suicidal tendencies." N.T. PCRA Hearing, 2/3/17, at 38. Trial counsel also explained that Ms. Brotherton testified for the Commonwealth at trial, and the photograph was admissible to establish that she had a prior relationship with Appellant. *Id*. at 45. The PCRA court credited trial counsel's explanation that he did not object to the photograph because it showed Appellant in a happier time. PCRA Court Opinion, 5/4/17, at unnumbered 6; *see also* N.T. PCRA Hearing, 2/3/17, at 36, 42. Given that Appellant struggled with depression and suicidal tendencies, trial counsel's strategy not to object to the photograph in order to show the jury that Appellant was capable of feeling happiness had some reasonable basis. *See Perry*, *supra* at 1290. Additionally, since the evidence of Appellant's guilt was overwhelming, the record does not support a reasonable probability that the verdict would have been different if trial counsel had objected to the hearsay statements. *See Johnson*, *supra* at 1272. Accordingly, we discern no abuse of discretion in the PCRA court's determination that counsel was not ineffective in failing to object to the photograph.

- 14 -

The last component of Appellant's fourth issue is the same as Appellant's fifth issue. Thus, we will address them together. Appellant contends that the PCRA court erred in determining that trial counsel was not ineffective for failing to object to the admission of two autopsy photographs, and in failing to request a limiting instruction to the jury regarding the photographs. Although counsel raised the issue on direct appeal, it was deemed waived based on counsel's failure to object to the photographs during trial. Appellant argues that he was prejudiced by counsel's inaction because the autopsy photographs were shown to the jury without a limiting instruction, and he lost the ability to appeal the issue.

In **Commonwealth v. Mollett**, 5 A.3d 291 (Pa.Super. 2010), this Court addressed the admission of post-mortem photographs of a murder victim and observed that

> [p]hotographs of a murder victim are not *per se* inadmissible. . . . The admission of such photographs is a matter within the discretion of the trial judge. The test for determining the admissibility of such evidence requires that the court employ a two-step analysis. First[,] a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.
>
> . . . .
>
> A criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the

- 15 -

question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

*Mollett*, *supra* at 301 (citing *Commonwealth v. Tharp*, 830 A.2d 519, 531 (Pa. 2003)).

The two autopsy photographs in question are in the certified record. They are black and white photographs (rather than color), and depict only the post-mortem head of the victim. In the first photograph, taken from the right side, a small gash is visible above the victim's right eye, and a small amount of blood is visible in the corner of his right eye. In the second photograph, taken from above, heavy discoloration of the victim's eyes is visible, and a small amount of blood appears in his right nostril and possibly dripping from a small medical device extruding from his mouth.

While we agree the photographs are potentially inflammatory to members of the jury, the photographs were of such essential evidentiary value that their need clearly outweighed the likelihood of inflaming the minds and passions of the jurors. *See Mollett*, *supra*. The photographs constituted a key piece of evidence to the prosecution's case and its efforts to prove a charge of murder. From the head wounds displayed in the photographs, the Commonwealth was able to show that the victim sustained fatal brain injuries as a result of the high-speed impact with Appellant's vehicle. Indeed, the trial

court determined that, although the autopsy photos were unpleasant, they were helpful to the jury's understanding of the injuries that the victim suffered as a result of the impact. N.T. Trial, 12/10-13/12, at 320. Although the Commonwealth was ultimately unsuccessful in proving first-degree murder, the photographs were relevant to prove, if not an intent to kill, at least the requisite level of malice necessary for the jury to convict Appellant of third-degree murder.

Furthermore, at the evidentiary hearing, trial counsel testified that the photographs in question were not nearly as gruesome as others that were available, and that he believed that an objection to the autopsy photographs was meritless, given the wide discretion accorded to trial courts to admit them. N.T. PCRA Hearing, 2/3/17, at 44, 67. He further explained that the trial court admitted the photographs to show the amount of force and the cause of death. *Id*. at 44, 62-63. Thus, even if trial counsel had objected to the introduction of the autopsy photographs at trial, he would likely have been overruled. *See Mollett*, *supra*. Moreover, in light of the overwhelming evidence of Appellant's guilt, we agree with the PCRA court's determination that, even if trial counsel was ineffective in failing to object to the autopsy photographs, any error in their admission was harmless, as their exclusion would not have changed the outcome of trial. *See* PCRA Court Opinion, 5/4/17, at 3-4; *see also Johnson*, *supra* at 1272. Therefore, as we discern no abuse of discretion, Appellant's final ineffectiveness claim warrants no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2018