J-S26038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRADLEY ARNDT :
:
Appellant : No. 59 MDA 2021

Appeal from the PCRA Order Entered December 15, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004253-2013

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: NOVEMBER 19, 2021**

Bradley Arndt ("Arndt") appeals from the Order denying his first Petition

for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42

Pa.C.S.A. §§ 9541-9546. We affirm.

On direct appeal, this Court previously set forth the factual background

underlying this appeal as follows:

> The victim [("D.S.")] and her four children moved into
> [Arndt's] home in 2010. According to [D.S.], the relationship
> changed beginning in November of 2011. At that point, [D.S.]
> "had to be with [Arndt], like, all the time." She "had to take
> showers with him." When she left the house without [Arndt], he
> texted and called her "excessively." [D.S.] then moved out in
> November of 2011 because she "found a picture of his ex-
> girlfriend on his phone; that combined with the clinginess." She
> moved back in with her husband, Richard, who is also the father
> of two of her children.
>
> After one to two months living with Richard, [D.S.] went
> back to living with [Arndt] because she "loved him" and "missed
> him." After another month, things were not working out with

[Arndt], and [D.S.] moved back in with Richard. After another month or two, in April of 2012, [D.S.] moved back in with [Arndt] because "he promised [they] would go to counseling."

After just one counseling appointment, [D.S.] testified that the "relationship just got really bad." Around the same period of time, in April 2012, [D.S.] stated that [Arndt] became "[v]iolent and physical." For example, when [D.S.] spent a night at the home of her friend, Sabrina, [Arndt] accused [D.S.] of "cheating on him." When [D.S.] and Sabrina went back to [Arndt's] house the next day, [Arndt] then asked [D.S.] to go into the bedroom and left Sabrina sitting in the living room. [D.S.] testified that [Arndt] pushed her onto the bed and had sex with her over her objection (["]April 2012 incident["]). [D.S.] came out of the bedroom and told Sabrina that [Arndt] raped her, and then [D.S.] drove Sabrina home.

[D.S.] next testified about events that happened on July 22, 2012 (["]July 2012 incident["]). She testified that she and [Arndt] had been arguing about money. The two went to a McDonald's drive-thru, and [D.S.] ordered a frozen drink. After they pulled out of the drive-thru, they began arguing about the cost of the frozen drink. The argument escalated and [Arndt] injured [D.S.] [D.S.] went home, got her children, and went to her mother's house. [D.S.'s] mother called police, and [D.S.] went to the hospital.

[D.S.] stayed with her mother for a few days then moved back in with [Arndt]. In late 2012, [Arndt] moved out of his house to live with his parents. [D.S.] and her children remained in [Arndt's] house until April 2013[,] when they moved in with a friend, Mark. [D.S.] testified that they "just left to get away" and "didn't take most of anything."

On May 1, 2013, [D.S.] and her friend, Alisha, went to [Arndt]'s home to retrieve her things. [D.S.] got her children's beds and went back to Mark's house. [Arndt] then sent [D.S.] a text message asking if she was going to get the rest of her things. [D.S.] also testified that the reason she wanted to go back and get more things for her kids was because she "was dealing with [Children and Youth Services] ... [and she] was worried that her kids didn't have really anything."

[D.S.] then went back to [Arndt's] house by herself. She testified that [Arndt] started to "grab [her] butt." [D.S.] told [Arndt] she was going to leave, and [Arndt] "pushed [her] down on the chair ... that has a foot[]stool attached to it" in the living room. [Arndt] tried to take off [D.S.'s] pants, but she pushed him away. [D.S.] testified that she tried to leave the house, but [Arndt] blocked her from doing so. Eventually, [Arndt] pushed [D.S.] into the bedroom and onto the bed; took her pants off; and, attempted to have oral sex with her. [D.S.] pushed and kicked [Arndt] away. She testified that [Arndt] then raped her. When he finished, [D.S.] ran outside to the truck and left (["]May 2013 incident["]).

[D.S.] then went to the hospital where a rape kit was performed. The hospital contacted police, and Detective Michael Hoffert [("Detective Hoffert")] of the Bern Township Police Department responded. He spoke with [D.S.], whom he described as "extremely upset," "crying," and "nervous." During the conversation, [D.S.] was receiving text messages from [Arndt]. Detective Hoffert later received copies of the text messages exchanged between [Arndt] and [D.S.]. In total, there were 147 text messages from [Arndt] to [D.S.], and 13 from [D.S.] to [Arndt].

One text message from [Arndt] to [D.S.] read, "Are you mad? 'Cause I asked you first, baby.'" Another message sent by [Arndt] stated, "Well, here goes our money, mine and yours to the state. Why[, D.S.] I asked you first. I did not make you, baby. I asked you." In a statement to police, [Arndt] admitted that he and [D.S.] had sex, but [he] believed it to be consensual.

Subsequently, [Arndt] was arrested and charged with numerous crimes related to the April 2012 incident, July 2012 incident, and May 2013 incident. After the presentation of the Commonwealth's case at trial, the trial court granted [Arndt's] [M]otion for judgment of acquittal with respect to certain charges. The jury found [Arndt] guilty of rape and sexual assault specifically with respect to the May 2013 incident. The jury also found [Arndt] guilty of [involuntary deviate sexual intercourse], stalking, simple assault, and false imprisonment. The jury found [Arndt] not guilty of other charges, including rape related to the April 2012 incident.

*Commonwealth v. Arndt*, 145 A.3d 779 (Pa. Super. 2016) (unpublished memorandum at 1-2). The trial court sentenced Arndt to an aggregate prison term of seven to twenty years in prison, followed by five years of probation.

Arndt filed a direct appeal, and this Court affirmed the judgment of sentence. *See id.* Arndt filed a *pro se* PCRA Petition, and Osmer Deming, Esquire ("Attorney Deming"), was appointed to represent Arndt throughout the PCRA proceedings. Attorney Deming filed an Amended PCRA Petition on Ardnt's behalf. Following a hearing, the PCRA court dismissed Ardnt's PCRA Petition on September 21, 2020. Ardnt filed a Motion for Reconsideration on October 13, 2020, which the PCRA court granted.[1] Order, 10/15/20. Following a hearing, the PCRA court entered an Order on December 15, 2020, denying the Motion for Reconsideration and denying Arndt's PCRA Petition. Order, 12/15/20, at unnumbered 2. Arndt filed a timely Notice of Appeal and a court-ordered Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Arndt raises the following issue for our review: "Did the PCRA court err in denying [Arndt's] Motion for Reconsideration and Petition for Post-Conviction Collateral Relief in light of trial counsel's failure to call character

---

[1] Ardnt also filed a Notice of Appeal on October 6, 2020. He withdrew that appeal after the PCRA court granted reconsideration. The grant of a motion for reconsideration tolls the time period for filing an appeal. *Commonwealth v. Moir*, 766 A.2d 1253 (Pa. Super. 2000); Pa.R.A.P. 1701(b)(3).

witnesses where credibility of the witness at trial was the paramount issue at trial?" Brief for Appellant at 6.

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Arndt claims that his trial counsel, Michael Dautrich, Esquire ("Attorney Dautrich"), was ineffective for failing to present witnesses to testify as to his good character. Brief for Appellant at 24. Arndt contends that character evidence was of particular importance where, as here, there were only two direct witnesses involved. *Id.* (citing *Commonwealth v. Weiss*, 606 A.2d 439 (Pa. 1992)). Arndt further argues that, because the only direct evidence of sexual assault came from D.S., "her credibility was of paramount importance and critical to the jury's determination of guilt." *Id.* at 25.

Arndt also disputes Attorney Dautrich's testimony at the PCRA hearings that he did not call character witnesses because the trial court had ruled that the Commonwealth could cross-examine potential character witnesses about Arndt's prior summary conviction for harassment of D.S. *Id.* at 26. Arndt

asserts that there is no record of this ruling by the trial court.[2] *Id.* Arndt

posits that, even assuming the trial court made such a ruling, there "is no

good argument that a conviction of summary harassment would have changed

the opinion of the character witnesses of [Arndt]'s reputation in the

community, which is the relevant inquiry." *Id.* Arndt also asserts that

Attorney Dautrich could have argued that D.S. had lied about the allegations

arising out of the summary harassment conviction. *Id.* at 27.

To prevail on a claim of ineffective assistance of counsel under the PCRA,

a petitioner must plead and prove, by a preponderance of the evidence, that

counsel's ineffectiveness "so undermined the truth-determining process that

no reliable adjudication of guilt or innocence could have taken place." 42

Pa.C.S.A. § 9543(a)(2)(ii). Specifically,

> [t]o be entitled to relief on an ineffectiveness claim, a PCRA
> petitioner must establish: (1) the underlying claim has arguable
> merit; (2) no reasonable basis existed for counsel's action or
> failure to act; and (3) he suffered prejudice as a result of counsel's
> error, with prejudice measured by whether there is a reasonable
> probability the result of the proceeding would have been different.
> *Commonwealth v. Chmiel*, ... 30 A.3d 1111, 1127 (Pa. 2011)
> (employing ineffective assistance of counsel test from
> *Commonwealth v. Pierce*, ... 527 A.2d 973, 975-76 (Pa.
> 1987)). Counsel is presumed to have rendered effective
> assistance. Additionally, counsel cannot be deemed ineffective for
> failing to raise a meritless claim. Finally, because a PCRA
> petitioner must establish all the *Pierce* prongs to be entitled to
> relief, we are not required to analyze the elements of an

---

[2] Our review of the record confirms that there is no docket entry or other evidence of Arndt's oral Motion in *limine*, beyond Attorney Dautrich's testimony regarding the same. N.T. (PCRA), 9/8/2020, at 10; *see also* N.T., 12/9/20, at 12-13.

ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (footnote and some citations omitted). "[I]f we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed reasonable." *Commonwealth v. Weiss*, 606 A.2d 439, 442 (Pa. 1992). In addition, we observe that the decision whether to call a certain witness is a matter of trial strategy. *Commonwealth v. Jones*, 652 A.2d 386, 389 (Pa. Super. 1995).

The PCRA court held three hearings on the instant PCRA Petition: July 27, 2020, September 8, 2020, and December 9, 2020. Attorney Dautrich testified at the September 2020 hearing that, after he had informed the trial court of his intention to present character witnesses, the Commonwealth indicated that it would use Arndt's prior summary conviction for harassment on cross-examination. N.T. (PCRA Hearing), 12/9/2020, at 12. Attorney Dautrich testified that the trial court made an *in limine* evidentiary ruling that character witnesses could be cross-examined regarding certain prior bad acts by Arndt, including the summary conviction for harassment of D.S. N.T. (PCRA Hearing), 9/8/20, at 10.

Attorney Dautrich further testified, during the December 2020 hearing, that after the trial court made this ruling, he discussed the issue with Arndt. *Id.* at 13. According to Attorney Dautrich, he and Arndt together determined

that it would be better to forgo character witnesses rather than let the Commonwealth have the "last say" by bringing up the prior conviction and trying to "fillet" the character witnesses. *Id.*; *id.* at 14 (wherein Attorney Dautrich testified that in his strategic opinion, Arndt was "ahead on points" at trial, and he and Arndt "agreed to leave it as it sat and not tempt fate by letting the District Attorney get into some other bad acts between the alleged victim and [Arndt]").

Moreover, Attorney Dautrich testified that there were numerous negative text messages between Arndt and D.S., as well as allegations of domestic violence. N.T. (PCRA hearing), 9/8/2020, at 16. According to Attorney Dautrich, "I thought, you know, why bring in these witnesses to say what a good guy he is and then have to go through one more revisiting, you know, this alleged violent relationship the two of them had." *Id.*

The PCRA court addressed Arndt's claim as follows:

[Arndt's] claim fails to demonstrate ineffective assistance of counsel[,] because [Arndt] has failed to demonstrate that the course of conduct pursued by counsel did not have some reasonable basis designed to effectuate [Arndt's] interests. When the [c]ourt finds that a reasonable basis exists for a particular course of action chosen by counsel, as it has here, the inquiry ends, and trial counsel's performance is deemed constitutionally effective. *Commonwealth v. Hammond*, 953 A.2d 544, 556 (Pa. Super. 2008); *Commonwealth v. Derk*, 719 A.2d 262 ([Pa.] 1998). Attorney Dautrich testified at the PCRA hearing that he did not want the character witnesses to be cross-examined about [Arndt's] summary harassment conviction. This [c]ourt avers that the trial strategy adopted by Attorney Dautrich was reasonable and would not amount to Attorney Dautrich being ineffective.

Th[e c]ourt also finds that, although there is no record of Attorney Dautrich's Motion in *Limine*, Attorney Dautrich knew about [Arndt's] prior conviction for harassment and made a reasonable decision not to call character witnesses because of that conviction. Even in the absence of an official ruling by the trial [j]udge, Attorney Dautrich had a reasonable basis for his decision not to call character witnesses and therefore he was not ineffective.

Trial Court Opinion, 2/23/21, at 3-4.

We conclude that the PCRA court did not err, and that Attorney Dautrich's decision not to call character witnesses on Arndt's behalf was a reasonable trial strategy, regardless of whether the trial court ruled on the oral Motion in *limine*. **See Commonwealth v. Van Horn**, 797 A.2d 983, 988 (Pa. Super. 2002) (concluding that trial counsel's testimony during the PCRA hearing that he did not call character witnesses because he believed they would be questioned about prior convictions was a reasonable trial strategy and not ineffective assistance of counsel); **see also Commonwealth v. Morales**, 701 A.2d 516, 526 (Pa. 1997) (holding "[t]rial counsel cannot be deemed ineffective for failing to present character witnesses who could have been cross-examined about appellant's prior bad acts."). Because the record supports the PCRA court's determination that Attorney Dautrich had a reasonable basis for not calling character witnesses in Arndt's trial, Arndt's ineffectiveness claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021