619 A.2d 1357

**COMMONWEALTH of Pennsylvania**

v.

**William GLOVER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1992.

Filed Jan. 27, 1993.

544

Christine M. Adair, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, TAMILIA and HESTER, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying appellant William Glover's petition for post-conviction relief. We reverse and remand for a new trial.

In August of 1982, Glover was tried before a jury and convicted of murder in the first degree and possession of an instrument of crime. New counsel filed post-trial motions, which were denied. Glover's third counsel represented him at sentencing and on direct appeal. Glover received a sentence of life imprisonment on the murder conviction and a concurrent two and one-half to five year sentence for the possession of an instrument of crime conviction. On direct appeal, this court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied allocatur. The United States District Court for the Eastern District of Pennsylvania thereafter denied habeas corpus relief.

On January 22, 1988, Glover filed a *pro se* petition under the Post Conviction Hearing Act, [PCHA] 42 Pa.C.S. §§ 9541 *et seq.*,[1] alleging ineffectiveness of counsel generally. Thereafter, Christine M. Adair, Esq. was appointed to represent Glover. Counsel filed an amended petition alleging trial counsel was ineffective for failing to present character evidence

1. The Post Conviction Hearing Act was amended effective April 13, 1988, and renamed the Post Conviction Relief Act.

and that all subsequent counsel were ineffective for failing to raise this issue.

A PCHA hearing was held before the Honorable James D. McCrudden, at which time Glover presented six witness who testified that they would have been available for trial and that they would have testified to Glover's good character. Following the hearing, Judge McCrudden denied Glover's request for collateral relief. This appeal followed. Glover raises the following issue for our review:

Was trial counsel ineffective in failing to present testimony as to appellant's good character and reputation, in violation of appellant's constitutional rights?

When evaluating ineffectiveness claims, the threshold inquiry is whether the underlying claim is of arguable merit, for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). If the claim has arguable merit, the appellant must then establish that the particular course of action chosen by counsel had no reasonable basis. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, the appellant must establish that counsel's action or inaction prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

At the PCHA hearing, trial counsel candidly admitted that he did not pursue the issue of character witnesses with his client. Counsel explained:

Because if we had discussed it, I think, it would have ... triggered something in my mind. I would have said, well, you don't have any real conviction here, we can go with character witnesses. And it is a case where I was looking for character witnesses because it was a close case. This was a close case, it was tried in front of Judge Theodore B. Smith. And Judge Smith gave a very strong character evidence charge. He was very good with character. And my best recollection is that I did not discuss ... character testimony with Mr. Glover.... I think I should have asked about character witnesses, given the fact that [Glover] had

no convictions and I knew that those arrests could not come in, I knew it. And if they tried to bring them in, I could have gotten a mistrial.

Recently, in *Commonwealth v. Carter*, 409 Pa.Super. 184, 597 A.2d 1156 (1991), this court addressed a similar issue. In *Carter*, the appellant alleged counsel was ineffective for failing to present character witnesses on his behalf. The court concluded that this claim had arguable merit. No evidentiary hearing had been held, and therefore the court remanded for a determination of whether counsel had explored this possibility with Carter, or whether counsel had a reasonable basis for not doing so. The court stated:

If, as appellant has alleged, character witnesses could have been obtained for his trial, then trial counsel's failure to inform appellant of that option *may* have deprived appellant of an available defense having substantial potential for success.

*Id.* at 199, 597 A.2d at 1163 (emphasis added). In *Carter*, the majority explained that the rationale for the admission of character evidence is that "an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character." *Id.* at 196, 597 A.2d at 1161. The court held that "counsel had a duty to consider possible defense strategies and to discuss with his client options which are available. A criminal defendant cannot be expected to offer to counsel potential character witnesses if counsel has not discussed with him the possible use of such evidence." *Id.* at 197–198, 597 A.2d at 1162.

When reviewing an ineffectiveness claim, we do not require the highest caliber of criminal defense skills; a minimum level of competency is the standard by which we judge counsel's performance. *Commonwealth ex rel. Washington v. Maroney, supra.* Here, counsel admitted at the PCHA hearing that this was a close case and that the defendant had no prior convictions which could be used to discredit proposed

character evidence on cross-examination or rebuttal.[2] Counsel conceded that he did not pursue the issue of character witnesses with his client. *Cf. Carter, supra.* Moreover, counsel was unable to give any reason for his failure to confront his client with this proposal, nor did he attempt to rationalize the decision as one based on trial tactics or strategy. Essentially, counsel acknowledged his error. This was an oversight which, in his candor and forthrightness, counsel recognized. We find, therefore, that this claim is of arguable merit and that counsel had no reasonable basis for failure to pursue this issue with his client. *Pursell, supra; Commonwealth ex rel. Washington v. Maroney, supra.*

 Failure to call a witness on defendant's behalf is not, however, per se ineffectiveness. Counsel need not discuss all strategic options with his or her client. *Carter,* 409 Pa.Super. at 196–97, 597 A.2d at 1162. However, if that option is fundamental to the client's defense and requires consultation with and input from the client in order to define and implement the strategy, then we will require counsel to inform the client accordingly. *See Commonwealth v. Saxton,* 516 Pa. 196, 200–201, 532 A.2d 352, 354 (1987); *see also* American Bar Association Standards for Criminal Justice 4–3.1(a), 4–3.1(b), 4–3.8, 4–6.2(a). Nonetheless, if counsel fails to discuss the option of presenting character witnesses, as was the case here, we may find ineffectiveness only if appellant establishes prejudice. *Pierce, supra.* Our review of the prejudice prong of the ineffectiveness test necessitates an examination of the entire record.

 The Commonwealth presented evidence from Dolores Gay who testified that at 9:35 p.m. on September 3, 1979, she saw a hooded man, whom she identified as the defendant, fire his handgun at the victim, John Campbell, outside the Last Stop Cafe. She stated that she heard one shot, and that she viewed this from the front steps of her home, about 60 feet away from the scene. Ms. Gay also testified that John

2. Glover's PCHA hearing was held on March 25, 1991 and June 13, 1991. The Commonwealth stipulated at the June 13 hearing that at the time of trial Glover had no prior convictions.

Campbell always wore a hooded sweater. On cross-examination, Ms. Gay acknowledged that in her initial interview with Detective Gerrard, which was typewritten by Detective Gerrard and signed by Ms. Gay, she was asked, "Did you see Rifle the night of the shooting?" to which she responded, "No." Apparently, "Rifle" was the defendant's nickname. Ms. Gay explained in her testimony that during the interview she had initially lied to Detective Gerrard because she did not want to get involved, but later in the interview she corrected her statement.

Shirley Rogers also testified on behalf of the Commonwealth. She stated that one month after the incident she was walking and overheard the defendant tell his girlfriend that he had killed "Johnny." Ms. Rogers stated: "Well, the exact words was [sic]: Yeah, I kilt [sic] the m-----f-----, and the name Johnny; and he ain't worried about nothing." One year later, Ms. Rogers saw the defendant in a neighborhood bar and, after she rebuffed his attempts at familiarities, he stated to her, "I kilt [sic] once, and I'll kill again." On cross-examination, Ms. Rogers testified that in her signed statement, which was taken approximately two months after the incident, there was no indication of the conversation to which she testified on direct examination. She further stated that she did mention it during her interview, but could not account for why it was written down by the detective conducting the interview. "Well, as I was talking, I thought they [were] writing everything down I said."

Another witness, Robert Gay, Ms. Gay's brother, testified that on the night in question he was in the Last Stop Cafe and, after hearing four or five shots outside, he saw the victim stagger inside. Mr. Gay went outside. Mr. Gay testified that he did not see anyone outside, but he did see a Cadillac fitting the description of the car owned by the defendant about four minutes after the shooting. Mr. Gay also testified that there were two cars fitting that description in the neighborhood and that he did not see the driver of the Cadillac on the night in question. Mr. Gay also testified that when the police rescue

van arrived, the victim, in response to police inquiry, stated, "Rifle did it."

To counter the Commonwealth's evidence, the defense presented two police officers. Detective John Minges testified that he had interviewed the victim on three occasions in the hospital prior to the victim's death, and that the victim appeared lucid and stated that he did not know who had shot him. Detective Minges testified that the victim did not give him any information that would have been helpful in determining who shot him. Officer Raymond Leahy also testified for the defense. Officer Leahy testified that he assisted in getting the victim into the police rescue van. He stated that he was at the head of the stretcher on which the victim was placed, and that he did not hear the victim state "Rifle did it."

At the PCHA hearing, it was established that six witnesses were available to testify as to Glover's good character. Additionally, trial counsel acknowledged that this was a close case. Even had the Commonwealth presented a stronger case, evidence of good character may still have been sufficient to create a reasonable doubt. *See Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981) (evidence of the defendant's good character, despite the strength of the Commonwealth's case, may be sufficient to create a reasonable doubt); *see also Commonwealth v. Stoner,* 265 Pa. 139, 108 A. 624 (1919); *Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073 (1983); *cf. Commonwealth v. Neely,* 372 Pa.Super. 519, 539 A.2d 1317 (1988) (reputation evidence is not to be used merely to tip the balance where the Commonwealth's case is weak, but may raise doubt even when the case against the defendant is strong; however, if all other other facts prove defendant guilty beyond reasonable doubt, he is not free to go simply because has has previously had a good reputation); *see generally* Packel & Poulin, *Pennsylvania Evidence* § 404.2 (1987).

Here, the jury was precluded from hearing positive and substantial character evidence which, if believed, may have been sufficient to raise a reasonable doubt and require an acquittal. The Pennsylvania Supreme Court has stated:

Evidence of good character is always admissible for the defendant in a criminal case; it is to be weighed and considered in connection with all other evidence in the cause, it may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. There may be cases in which, owing to the peculiar circumstances in which a man is placed, evidence of good character may be all he can offer in answer to a charge of crime. Of what avail is good character, which a man may have been a lifetime in acquiring, if it is to benefit him nothing in his hour of peril.

*Commonwealth v. Cleary,* 135 Pa. 64, 84, 19 A. 1017, 1018 (1890).

The PCHA court, in its opinion denying collateral relief, reviewed the Pennsylvania Supreme Court's decisions in *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981) and *Commonwealth v. Neely,* 522 Pa. 236, 561 A.2d 1 (1989),[3] as well as Glover's arrest record.[4] After noting the crucial nature of character evidence, the court summarized trial counsel's testimony at the PCHA hearing. The court also stressed trial counsel's familiarity with the law of character evidence, pointing out that counsel "had argued successfully in Superior Court that trial counsel was ineffective for not objecting to impeachment of character witnesses by arrests only ..." Counsel's successful appeal in that case, *Commonwealth v. Cabeza,* 300 Pa.Super. 483, 446 A.2d 958 (1982), took place just prior to Glover's trial. In concluding, the PCHA court stated that "given this criminal history, to present evidence of good character and reputation for honesty may well have been futile or subject to reputation by the prosecution." The PCHA court then denied Glover's PCHA petition.

3. In *Neely,* the Pennsylvania Supreme Court held that a criminal defendant is entitled to a jury charge that evidence of good character or reputation may, in and of itself, create a reasonable doubt of guilt and require a verdict of not guilty.

4. Prior to trial, Glover had three previous *arrests* for drug offenses and one arrest for harassment, reckless endangerment, simple and aggravated assault; this latter arrest was withdrawn for lack of evidence.

We are unable to reconcile the *Scott* decision with the PCHA's court somewhat unexpected conclusion here. *Scott* is particularly relevant in the context of this case since its holdings bear directly on the circumstances here. The *Scott* court held: (1) a defendant .is entitled to a charge that character evidence alone may be sufficient to raise a reasonable doubt and thus justify acquittal; and, (2) cross-examination of character witnesses on their knowledge of the accused's prior arrests is prohibited. *Id.* at 192–93, 436 A.2d at 609–10. Applying the law of *Scott,* as well as various other decisions in the Commonwealth, it is clear that counsel's omission had no reasonable basis and prejudiced Glover. *See Pierce, supra; see also Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073 (1983) (decision of defense counsel to forego character testimony in a rape prosecution where there are only two direct witnesses involved was ill advised and counsel was found ineffective); *cf. Commonwealth v. Schultz,* .335 Pa.Super. 306, 484 A.2d 146 (1984) (defense counsel's failure to request instruction that evidence of good character may by itself be sufficient to raise a reasonable doubt, or to challenge its absence, constituted ineffective assistance); *Commonwealth v. Simler,* 320 Pa.Super. 342, 467 A.2d 355 (1983) (Cirillo, J., dissenting) (where counsel testified at a hearing that there was a potential character witness whom he had considered calling, but decided not to do so for tactical reasons, majority found counsel ineffective).

In several other cases, this court has disposed of this issue and determined that a new trial was not warranted. We examine those cases briefly to illustrate why, in this particular case, justice requires that we afford the defendant relief.

In *Commonwealth v. Ferrari,* 406 Pa.Super. 12, 593 A.2d 846 (1991), the defendant alleged that his trial counsel was ineffective for failing to present character evidence on his behalf. There, the defendant testified and his testimony was confirmed "from beginning to end" by various defense witnesses. *Id.* at 25, 593 A.2d at 852. This court reasoned that because the sole issue was *not* one of the credibility of the defendant versus that of the Commonwealth's witnesses, *see*

*Commonwealth v. Simler*, 320 Pa.Super. 342, 467 A.2d 355 (1983); *Commonwealth v. Luther, supra*, the defendant had failed to establish that "but for the act or omission challenged, there is a reasonable probability that the result would have been more favorable to appellant." *Id.*, quoting *Commonwealth v. Wells*, 396 Pa.Super. 70, 78, 578 A.2d 27, 31–32 (1990). Having failed to establish prejudice, the defendant's claim of ineffectiveness failed. Here, the defendant did not take the stand and, therefore, the rationale underlying the *Ferrari* decision in not applicable here. Moreover, we are of the opinion that the defendant in this case has established that but for counsel's failure to call character witnesses, there is a reasonable probability that the result would have been an acquittal.

In *Commonwealth v. Mickens*, 409 Pa.Super. 266, 597 A.2d 1196 (1991), this court once again recognized that counsel may be found ineffective when he or she fails to use character evidence on the defendant's behalf if there is no reasonable basis for failing to do so. *Id.* at 279, 597 A.2d at 1203. The facts of that case led this court to conclude that trial counsel was constitutionally effective. At the post-trial hearing, counsel testified that he was not ignorant of the option of calling character witnesses and had in fact discussed this option with his client and, for tactical reasons, decided that that option was not worth pursuing. The trial court found this testimony credible. We concluded that counsel had a reasonable basis for his decision and, therefore, was not ineffective:

> Because counsel's decision not to present character witnesses was made after consultation with appellant and was based upon appellant's responses to counsel's inquiries and counsel's experience as a trial lawyer, the trial court could properly conclude that counsel's performance was reasonable.

*Id.* at 281, 597 A.2d at 1204. Unlike *Mickens*, counsel in the instant case stated that he did not consult with his client about character witnesses. In fact, counsel stated that he thought "he should have asked about character witnesses[.]"

In its brief, the Commonwealth argues that the six witnesses presented at the PCHA hearing would not have been helpful because of "familial ties." The Commonwealth states: "Defendant has presented no witnesses that knew him from any non-familial community interactions." This statement is not accurate. Although four of the six witnesses presented at the PCHA hearing were related to Glover, one of the character witnesses was Glover's mother, one was his mother-in-law, one was his uncle, and one was the mother of his son, the other two witnesses were unrelated to the defendant.

In *Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992), the Pennsylvania Supreme Court stated: "Although familial character witnesses generally lack the credibility of unbiased non-familial witnesses, an attitude that they are *per se* worthless, is sufficient evidence of counsel's incompetency." *Id.* at 8, 606 A.2d at 443. The court found that the defendant was prejudiced and that defense counsel was ineffective for failing to call character witnesses. The *Weiss* court noted:

> The only issue then, was whether appellant or someone else was responsible for what happened. Considering there was no overwhelming evidence of guilt in this case, credibility of the witnesses was of paramount importance, and counsel's error not to employ character witnesses, familial or otherwise, undermined appellant's chances of instilling reasonable doubt in the minds of the jury and resulted in prejudice to the appellant.

*Id.* at 9, 606 A.2d at 443.

Similarly, here there was no overwhelming evidence of guilt; the Commonwealth's case was based upon a witness's identification of a hooded man from a distance of 60 feet in the evening in an area lit by a neon bar sign and a streetlight and circumstantial evidence which was, in part, refuted by the police officers testifying on behalf of the defense. Had counsel presented available character witnesses, the jury may have found reasonable doubt. We conclude, therefore, that coun-

sel's failure to do so resulted in prejudice to the defendant. *Pierce, supra; see also Weiss, supra.*[5]

We do not reach this decision lightly. We are well aware of the frenzy ignited when a defendant, long since tried, convicted and imprisoned, is granted a new trial. At the cost of upsetting what for some time seems ordered, our correction of inevitable errors is necessary to give meaning to the defendant's constitutional right to counsel and to further the pursuit of justice. In this case, justice requires that we grant the defendant a new trial and allow him the opportunity to present character witnesses in his defense.

Reversed. Case remanded for new trial. Jurisdiction relinquished.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I must respectfully Dissent. I would affirm on the Opinion of the Court below. Moreover, the absence of character witnesses, in my judgment was not prejudicial due to the fact that appellant's decision not to take the stand would indicate his credibility was not a crucial part of his defense.

---

5. Justice McDermott warned that the decision in *Weiss* "should not be blindly applied to all those cases where an attorney made a tactical decision to eschew the calling of character witnesses." *Weiss*, 530 Pa. at 10, 606 A.2d at 444 (McDermott, J., concurring). As we have clarified above, this case does not fall within the sweep of that warning.