J-S09015-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TEVIN THOMAS | : | |
| | : | |
| Appellant | : | No. 974 EDA 2025 |

Appeal from the PCRA Order Entered October 25, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014120-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TEVIN THOMAS | : | |
| | : | |
| Appellant | : | No. 975 EDA 2025 |

Appeal from the PCRA Order Entered October 25, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014121-2014

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED MAY 13, 2026**

In these consolidated appeals, Tevin Thomas (Appellant) appeals, *nunc pro tunc*, from the order dismissing his first petition timely filed pursuant to the Post Conviction Relief Act (PCRA). *See* 42 Pa.C.S.A. §§ 9541-9546. Appellant raises claims of ineffective assistance of counsel (IAC) related to his

_____

[*] Former Justice specially assigned to the Superior Court.

appointed trial counsel and direct appeal counsel. After careful review, we affirm.

In a prior appeal, this Court summarized the underlying facts as follows:

On March 25, 2014, at around 5:30 [p.m.], Philadelphia Police Officers Christopher Daukus [(Officer Daukus)], Michael Inemer [(Officer Inemer)], George Lane [(Officer Lane)], and Stephen Murray were responding to an incident on the 4800 block of Palethorp Street in Philadelphia when they heard gunshots nearby, coming from the direction of the intersection of Louden and Mascher Streets. The officers ran towards the gunshots, and, at the intersection of Paleth[or]p and Louden Streets, met two armed men, later identified as Paris Nicholson [(Nicholson)] and Demetrius Dickens [(Dickens)].

Dickens complied with police orders to drop his weapon, and officers … placed him under arrest. Dickens told police that he and Nicholson had been fleeing a shooting at the corner. Officers Daukus and Lane followed Nicholson as he attempted to escape. While in flight, Nicholson turned and shot at the officers. Officer Lane returned fire, exchanging approximately 15 to 20 shots with Nicholson. The officers then apprehended Nicholson and placed him under arrest. Police recovered firearms from both Nicholson and Dickens.

A witness reported to Officers Daukus and Lane that a man had been shot around the corner, on Mascher Street. Officer Lane proceeded there, and he and additional officers began looking for the unidentified injured male.

Officer Lane discovered an injured man [with a gunshot wound to his leg,] later identified as Appellant, sitting on a wall at 4761 Mascher Street. Officer Lane also recovered a Glock .9 millimeter semi-automatic pistol with an extended, 33-shot magazine from the rear wheel well of a nearby minivan….

*Commonwealth v. Thomas*, 201 A.3d 879, 1202 EDA 2017 (Pa. Super. 2018) (unpublished memorandum at 1-3) (footnote omitted).

Law enforcement called for an ambulance to transport Appellant to the hospital for treatment of his gunshot wound.[1] N.T., 1/6/16, at 90. Pertinent to the instant appeal, while waiting for the ambulance to arrive, Philadelphia Police Officer Peter Brendlmaier (Officer Brendlmaier) spoke with Appellant. N.T., 1/6/16, at 88-92. Officer Brendlmaier asked Appellant to provide his name, assessed the severity of his gunshot wound, and inquired if Appellant knew who had shot him. *Id.* at 88-89, 91. As the PCRA court explained, "Officer Brendlmaier testified that instead of answering, Appellant screamed in pain and asked to be taken to the hospital." PCRA Court Opinion, 7/8/25, at 9 (citing N.T., 1/6/16, at 91-92). Shortly thereafter, paramedics arrived and transported Appellant to the hospital. N.T., 1/6/16, at 93.

In December 2014, the Commonwealth charged Appellant at two dockets (CP-51-CR-14120-2014 and CP-51-CR-14121-2014) with two counts each of attempted murder and aggravated assault, and one count each of firearms not to be carried without a license and carrying firearms on public streets in Philadelphia.[2] The matter proceeded to a consolidated jury trial in

_____

[1] Appellant was not placed under arrest at this time. N.T., 1/7/16, at 122. Rather, he was arrested two days after the shooting, following law enforcement's review of surveillance video. *Id.* at 125-26.

[2] 18 Pa.C.S.A. §§ 901(a), 2502(a), 2702(a), 6106(a)(1), 6108. The Commonwealth also charged Appellant with two counts each of simple assault and recklessly endangering another person, *id.* §§ 2701 and 2705, but *nolle prossed* those charges prior to trial.

January 2016. Appellant was represented by court-appointed counsel, Richard A. Guiliani, Esquire (Trial Counsel).

The PCRA court[3] capably detailed the procedural history in its Pa.R.A.P. 1925(a) opinion:

> At Appellant's trial, the Commonwealth presented the testimony of four (4) eyewitnesses,[4] six (6) Philadelphia police officers, three (3) Philadelphia police detectives, one (1) Philadelphia police sergeant, and two (2) expert witnesses. Surveillance video capturing the shootout was also admitted into evidence. Appellant pursued a self-defense theory at his trial.[5] [Following the conclusion of evidence, the jury found Appellant guilty of the above-mentioned offenses.]
>
> On April 11, 2016, [the trial] court sentenced Appellant to an aggregate term of twenty (20) to forty (40) years of confinement. [At the conclusion of the sentencing hearing, the trial court permitted Trial Counsel to withdraw his appearance, and appointed Vazken Zerounian, Esquire (Direct Appeal Counsel), to represent Appellant. N.T., 4/11/16, at 31]. On April

_____

[3] The same PCRA court judge also presided over Appellant's jury trial.

[4] The eyewitnesses each testified to hearing gunshots and seeing Appellant in possession of a gun during or immediately after the shooting. *See* N.T., 1/6/16, at 64-69; N.T., 1/7/16, at 56-62, 65-68, 163-71; N.T., 1/8/16, at 6-12, 15-17; N.T., 1/11/15, at 21. Additionally, the shooting was captured by surveillance video, which was played for the jury. N.T., 1/6/16, at 64, Exhibit C-54 (video); *see also* N.T., 1/7/16, at 70-74. As the PCRA court stated, the surveillance video "showed a different angle of the shooting and corroborated the eyewitness testimonies presented by the Commonwealth." PCRA Court Opinion, 7/8/25, at 7.

[5] Appellant elected not to testify and presented no witnesses. *See* N.T., 1/11/16, at 97. The trial court colloquied Appellant to determine whether his decision not to testify was made knowingly, intelligently, and voluntarily. *Id.* at 97-101. The court asked Appellant, twice, "Are you satisfied with the representation of your attorney?" *Id.* at 99, 101. Appellant responded in the affirmative on both occasions. *Id.*

19, 2016, Appellant[, through Direct Appeal Counsel,] filed a post-sentence motion, [asserting that the verdicts were against the sufficiency and weight of the evidence, and that the sentencing court abused its discretion in imposing a manifestly excessive sentence. ***See generally*** Post-Sentence Motion, 4/19/16. The trial] court denied [the post-sentence motion] on May 10, 2016. Appellant did not file a timely notice of appeal and instead later filed a [PCRA] petition … seeking the reinstatement of his direct appeal rights *nunc pro tunc*. After [the PCRA] court granted Appellant's petition, Appellant filed a notice of appeal to the Superior Court of Pennsylvania.[6]

On November 27, 2018, the Superior Court affirmed Appellant's judgment of sentence, concluding that there was sufficient evidence to support his convictions, the jury's verdict was not against the weight of the evidence, and Appellant's sentence was not unduly harsh. [***See generally Thomas***, 201 A.3d 879.[7]] On June 4, 2019, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal. [***Commonwealth v. Thomas***, 213 A.3d 251 (Pa. 2019).]

PCRA Court Opinion, 7/8/25, at 2-3 (footnotes added; some internal citations omitted; formatting and capitalization modified).

_____

[6] On March 28, 2017, the PCRA court permitted Direct Appeal Counsel to withdraw his appearance and appointed new counsel to represent Appellant. Order, 3/28/17.

[7] On direct appeal, in connection with his sufficiency of the evidence challenge pertaining to the convictions of attempted murder and aggravated assault, Appellant claimed the jury unreasonably rejected his justification defense. ***Thomas***, 201 A.3d 879 (unpublished memorandum at 7-8). This Court disagreed, determining that "the jury reasonably inferred from the evidence, evaluated in the light most favorable to the Commonwealth, that Appellant provoked or continued the use of force, when he continued firing at Nicholson and Dickens, and that Appellant could have safely retreated but failed to do so[.]" ***Id.*** (unpublished memorandum at 10) (citation and internal quotation marks omitted).

On January 20, 2020, Appellant, through prior PCRA counsel, filed the instant timely PCRA petition, his first. Appellant raised the following IAC claims:

(1) Trial Counsel's IAC for failing to present character witnesses on Appellant's behalf at trial;

(2) Trial Counsel's IAC for failing to object to the Commonwealth's eliciting inadmissible trial testimony from Officer Brendlmaier that improperly commented on Appellant's "pre-arrest silence";

(3) Direct Appeal Counsel's IAC for failing to raise on direct appeal a challenge to the improper admission of Officer Brendlmaier's above-mentioned trial testimony; and

(4) Trial Counsel's IAC for failing to move for a mistrial in response to the prosecutor's improper and prejudicial reference to Appellant's pre-arrest silence during closing argument.

PCRA Petition, 1/20/20, ¶¶ 5-8. Appellant also requested an evidentiary hearing and identified Trial Counsel and Appellant as proposed witnesses. *Id.* ¶ 10.

In its opinion, the PCRA court detailed the ensuing procedural history as follows:

On October 13, 2021, the Commonwealth filed a motion to dismiss in which it requested that Appellant's [PCRA] petition be dismissed without a hearing. Appellant filed a response in opposition to the Commonwealth's motion to dismiss on June 8, 2022. The Commonwealth filed a supplemental motion to dismiss on December 13, 2022.

On September 7, 2023, after independently reviewing Appellant's PCRA petition, the Commonwealth's motion to dismiss, and the record, [the PCRA] court determined that the issues raised by Appellant in his PCRA petition were without arguable merit and

filed a twenty[-]day notice to dismiss [the petition without a hearing,] pursuant to Pa.R.Crim.P. 907. [Appellant did not file a response. By order entered on October 25, 2023, the PCRA court dismissed Appellant's petition.]

On June 14, 2024, Appellant filed a subsequent PCRA [petition] alleging ineffective assistance of his original PCRA counsel [based on PCRA counsel's failure to file Appellant's requested appeal from the denial of PCRA relief]. The Commonwealth filed [a] response on January 2, 2025, wherein [it] did not oppose an evidentiary hearing pertaining to this claim. Accordingly, on March 25, 2025, [the PCRA] court granted Appellant's [petition] and reinstated his appellate rights to pursue this matter[, *nunc pro tunc*. **See**, **e.g.**, **Commonwealth v. Bennett**, 930 A.2d 1264, 1275 (Pa. 2007) (holding that the PCRA petitioner was entitled to reinstatement of his appeal rights, *nunc pro tunc*, where he properly invoked the "newly-discovered fact" exception to the PCRA's one-year time bar, 42 Pa.C.S.A. § 9545(b)(1)(ii), based upon his discovery of PCRA counsel's abandonment).]

PCRA Court Opinion, 7/8/25, at 3-4 (capitalization modified).

On April 10, 2025, Appellant filed a notice of appeal *nunc pro tunc*. The PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied. The PCRA court thereafter issued its Rule 1925(a) opinion on July 8, 2025.

Appellant presents four issues for our consideration:

1. Did the PCRA court err in concluding … that Appellant's claims lack arguable merit and in denying an evidentiary hearing …, where Trial Counsel was ineffective for failing to present character evidence?

2. Did the PCRA court err in concluding … that Appellant's claims lack arguable merit and in denying an evidentiary hearing …, where Trial Counsel was ineffective for failing to object to [Officer Brendlmaier's] testimony about Appellant's pre-arrest silence?

3. Did the PCRA court err in concluding … that Appellant's claims lack arguable merit and in denying an evidentiary hearing …, where [Direct Appeal] Counsel was ineffective for failing to raise the claim of trial error in admitting evidence of Appellant's pre-arrest silence on direct appeal?

4. Did the PCRA court err in concluding … that Appellant's claims lack arguable merit and in denying an evidentiary hearing …, where Trial Counsel was ineffective for failing to request a mistrial when, during closing argument, the prosecutor impermissibly referred to Appellant's [pre-arrest] silence?

Appellant's Brief at 3-4 (record citations omitted; capitalization modified).

We review the dismissal of a PCRA petition to determine "whether the PCRA court's factual findings are supported by the record and free of legal error." **Commonwealth v. Thomas**, 323 A.3d 611, 620 (Pa. 2024). We "consider the record in the light most favorable to the prevailing party at the PCRA level," and "grant great deference to the PCRA court's findings that are supported in the record." **Commonwealth v. Diaz**, 183 A.3d 417, 421 (Pa. Super. 2018) (citations omitted). "A PCRA court's credibility determinations, when supported by the record, are binding on an appellate court[,] but its legal conclusions are reviewed *de novo*." **Thomas**, 323 A.3d at 620. "[T]he petitioner has the burden of persuading th[e appellate c]ourt that the PCRA court erred and that such error requires relief." **Commonwealth v. Montalvo**, 205 A.3d 274, 286 (Pa. 2019).

This Court has recognized that

[t]here is no absolute right to an evidentiary hearing on a [PCRA] petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to

dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. McCready***, 295 A.3d 292, 298 (Pa. Super. 2023) (citation omitted).

Here, in each of his issues, Appellant asserts IAC claims. As our Supreme Court has explained,

> a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from[, *inter alia*,] the "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). Pennsylvania law presumes counsel is effective; a PCRA petitioner bears the burden of proving otherwise. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018); ***see also Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and internal quotation marks omitted)).

To establish an IAC claim, a PCRA petitioner must plead and prove three prongs:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) [the petitioner] suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. … Additionally, counsel cannot be deemed ineffective for failing to

raise a meritless claim. Finally, because a PCRA petitioner must establish all the [IAC] prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (internal citations and footnote omitted).

In his first issue, Appellant argues the PCRA court improperly denied relief on his claim of Trial Counsel's IAC for failing to present trial testimony from a character witness, Jennifer Hall (Ms. Hall).[8] ***See*** Appellant's Brief at 14-17. Appellant asserts Trial Counsel unprofessionally

failed to investigate or present available evidence of Appellant's reputation in the community for pertinent traits, such as peacefulness *and* non-violence, which was directly relevant to the charges of attempted murder and aggravated assault[.]

***Id.*** at 15 (italics in original).

Appellant contends he established all three prongs of the IAC test with respect to this claim. ***Id.*** at 15-17; ***see also Treiber***, ***supra***. Appellant asserts his

_____

[8] Nowhere in his appellate brief, or PCRA petition, does Appellant identify Ms. Hall by name or explain the substance of her proposed testimony. ***See*** Appellant's Brief at 14-17; PCRA Petition, 1/20/20, ¶ 5. Rather, the only place in which Appellant identifies Ms. Hall is in his Response to the Commonwealth's Motion to Dismiss the PCRA petition. Response to Motion to Dismiss, 6/8/22, at 9 (Appellant asserting he met Ms. Hall, a "volunteer youth counselor," in 2010, when Appellant participated in a Philadelphia community recreation event with Ms. Hall). Appellant attached to his Response an affidavit signed by Ms. Hall. ***Id.***, Exhibit D-1 (Affidavit dated Aug. 27, 2021). Ms. Hall stated in her affidavit that "[Appellant] enjoyed a reputation as a peaceful and non-violent person among those I spoke with." ***Id.***, Exhibit D-1, ¶ 6.

underlying claim has arguable merit because evidence of good character for pertinent traits—here, peacefulness and non-violence in a case involving allegations of unprovoked aggression—is admissible as substantive evidence that may give rise to reasonable doubt.

Appellant's Brief at 15 (citations omitted). Appellant claims Trial Counsel lacked any reasonable basis for his failure to present character testimony at trial, as "counsel was aware of potential character evidence from pretrial discussions but failed to investigate or present it without justification[.]" *Id.* at 16 (record citations omitted). Finally, Appellant avers Trial Counsel's ineffectiveness in this regard prejudiced him. *Id.* at 17 ("[P]rejudice is manifest: but for [Trial C]ounsel's error, there is a reasonable probability of a different [trial] outcome.").

It is established that defense counsel "has a general duty to undertake reasonable investigations," including interviewing potential witnesses, and that an "unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel." *Commonwealth v. Johnson*, 966 A.2d 523, 535 (Pa. 2009) (citations omitted); *see also Commonwealth v. Peterkin*, 513 A.2d 373, 382 (Pa. 1986) ("Failure of trial counsel to conduct a more intensive investigation or to interview potential witnesses does not constitute ineffective assistance of counsel, unless there is some showing that such investigation or interview would have been helpful in establishing the asserted defense, or would have developed more than was already known by trial counsel.").

This Court has stated that "[f]ailure to present available character witnesses may constitute ineffective assistance of counsel." *Commonwealth v. Van Horn*, 797 A.2d 983, 987 (Pa. Super. 2002) (citation omitted). *But see Commonwealth v. Abdul-Ali*, 345 A.3d 759, 774 (Pa. Super. 2025) (stating that "the failure to call character witnesses does not constitute *per se* ineffectiveness." (citation and brackets omitted)).

To prevail on a claim alleging IAC for failure to call a potential witness, a PCRA petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Miller*, 231 A.3d 981, 992 (Pa. Super. 2020) (citations omitted). To establish prejudice, a petitioner must "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Bishop*, 266 A.3d 56, 65 (Pa. Super. 2021) (citation omitted).

Instantly, although Appellant submitted an affidavit from Ms. Hall, albeit belatedly, at no time did Appellant assert that Ms. Hall was willing and available to testify on Appellant's behalf at trial. *See Van Horn*, 797 A.2d at 988-89 (concluding PCRA petitioner failed to establish IAC claim asserting his trial counsel's failure to call character witnesses at trial, where petitioner did not demonstrate that the witness was available and willing to testify on

petitioner's behalf at trial). Appellant also failed to offer anything to indicate that Trial Counsel was—or should have been—aware of Ms. Hall's existence and purported availability to testify at trial. *Miller*, 231 A.3d at 992.

Appellant's IAC claim also fails because he cannot establish prejudice. *Id.*; *Bishop*, 266 A.3d at 65. As the PCRA court cogently reasoned in its Pa.R.A.P. 1925(a) opinion:

> A meritless failure to present character evidence has the most impact—and is [] the most prejudicial—in cases where the only evidence is competing testimonies. *Commonwealth v. Alceus*, 315 A.3d 853, 862-63 (Pa. Super. 2024). This kind of "he said/she said" case is determined by credibility, making character evidence central and sufficient by itself to create a reasonable doubt. *Id.*; *see* [*also*], *e.g.*, *Commonwealth v. Weiss*, 606 A.2d 439[, 442] (Pa. 1992) (affirming a PCRA court's decision to reverse and remand due to a failure to present character evidence, holding that, "[i]n a case [such as] this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility"); *Commonwealth v. Hull*, 982 A.2d 1020, 1023 (Pa. Super. 2009) (holding that counsel was ineffective for failing to call a character witness in a case where "no one other than G.H. testified as to the acts upon which the charges were based and there were no physical findings to corroborate the acts"). Accordingly, a meritless failure to present character evidence in a he said/she said case is sufficiently prejudicial to establish this element. *Alceus*, 315 A.3d at 862-63.
>
> That said, **in cases with evidence beyond competing testimony, the impact of character evidence is significantly diminished**, especially when other evidence cumulatively corroborates or refutes a witness's testimony. *In the Interest of R.D.*, 44 A.3d 657, 669-72 (Pa. Super. 2012); *Commonwealth v. Tharp*, 101 A.3d 736, 760-61 (Pa. 2014). For example, in *Tharp*, the Pennsylvania Supreme Court affirmed a PCRA court's denial of relief for ten (10) [IAC] claims, including a failure to present character evidence claim. *Id.* at 746. In that case, the defendant's testimony that she did not starve her child

to death was refuted by multiple other witnesses with detailed testimony and evidence from the medical examiner that established that the defendant's child died of malnutrition. *Id.* at 742-45. Comparatively, the evidence in *Tharp* is less overwhelming than the evidence in the case at hand.

PCRA Court Opinion, 7/8/25, at 5-6 (emphasis added; some citations modified).

The PCRA court provided the following analysis of Appellant's claim:

At Appellant's trial, the Commonwealth presented the testimony of four (4) eyewitnesses, six (6) Philadelphia police officers, three (3) Philadelphia police detectives, one (1) Philadelphia police sergeant, and two (2) expert witnesses. Surveillance video capturing the shootout was also admitted into evidence. Appellant pursued a self-defense theory at his trial. **The cumulative impact of this evidence proves beyond a reasonable doubt that Appellant was in a gunfight, had the opportunity to retreat, and decided to re-engage in the shootout.**

…. Eyewitnesses, including Robert Fuentes [(Fuentes)], Carlos Cruz, Adilia Carlton, and Philadelphia Police Officer Luis Miranda [(Miranda)], all testified that they heard gunshots and identified Appellant by his clothing as the man on Loudon Street with a gun during or soon after the shooting. **Surveillance video recovered from the scene corroborates the testimony of the eyewitnesses who saw the shooting.** N.T., 1/6/16, at 64-69; N.T., 1/7/16, at 56-62, 65-68, 163-71; N.T., 1/8/16, at 6-12, 15-17; N.T., 1/11/15, at 21.

[] Fuentes testified that he witnessed the shooting from his car while on his way home from work. Fuentes testified that he saw [] Nicholson and [] Dickens firing shots eastward while walking backwards as Appellant returned fire westward, towards them, on Loudon Street. N.T., 1/8/16, at 6-12, 15-17, 21-24. [] Miranda, an off-duty Philadelphia Police officer, testified[, as a lay witness,] that he saw a man matching the clothing of Appellant get shot in the leg, get up, and continue to fire as the other two men fled. Shooting at fleeing men is not retreating or self-defense. **Surveillance video showed a different angle of the shooting and corroborated the eyewitness testimonies presented by the Commonwealth.** N.T., 1/7/16, at 163-71.

- 14 -

[Officer] Lane found Appellant sitting on a wall with a gunshot wound to the leg. Officer Lane recovered a semi-automatic pistol with an extended … shot magazine from the wheel of a van across the street from where Appellant was sitting. N.T., 1/11/16, at 77-79. Appellant was identified as one of the shooters and arrested after being released from the hospital. N.T., 1/7/16, at 127-28.

**From start to finish, the facts surrounding the shooting are well documented and corroborated by multiple pieces of *irrefutable* evidence.** As a result, [Trial C]ounsel cannot be [deemed] ineffective for failing to call [Ms.] Hall as an eyewitness.

Even if the questionably probative character evidence was introduced and successfully established that Appellant had a peaceful reputation and character, "he is not free to go simply because he has previously had a good reputation." ***Commonwealth v. Glover***, 619 A.2d 1357, 1360 (Pa. Super. 1993). The combination of video evidence, experts, and witness testimony would establish beyond a reasonable doubt that Appellant, even if he was known as the most peaceful man in the community, elected to reengage in a gunfight and fire at two fleeing individuals rather than retreating to safety. Accordingly, **Appellant was not and could not have been prejudiced by a lack of character evidence** at trial.

PCRA Court Opinion, 7/8/25, at 6-8 (emphasis added; some citations modified).

Our review discloses the PCRA court's analysis is supported by the law and the record, and its legal conclusion is sound. ***See id.*** Moreover, we reiterate that, during his colloquy at trial regarding his decision to not testify, Appellant confirmed—twice—that he was "satisfied with the representation of [Trial Counsel.]" ***Id.*** N.T., 1/11/16, at 99, 101. Appellant made this

representation shortly after Trial Counsel stated, in open court, that the defense intended to call no witnesses. *Id.* at 97.

Based upon the foregoing, we conclude the PCRA court properly denied relief on Appellant's claim of Trial Counsel's IAC for failing to call Ms. Hall as a character witness. Appellant's first issue merits no relief.

In his second issue, Appellant contends the PCRA court improperly denied relief on his claim of Trial Counsel's IAC for failing, at trial, to lodge an objection to Officer Brendlmaier's inadmissible reference to Appellant's "pre-arrest silence." *See* Appellant's Brief at 17-19.

By means of background, we set forth the relevant testimony adduced during the Commonwealth's direct examination of Officer Brendlmaier:

> A. [Officer Brendlmaier:] I asked [Appellant], "Who shot you?" As soon as that question comes out, [Appellant] starts screaming, and I never got an answer. And [Appellant] asked, "Can you scoop [(*i.e.*, transport)] me?" And I said, "No, rescue is coming. [Appellant's gunshot wound] is not that bad from what I see." So I never found out. [Appellant] never answered my question. But he did ask me a follow-up question, "Can you take me to the hospital and get me out of here?" So the medics were pulling up, so that was it. They came over and they started doing their thing[.]
>
> Q. [The prosecutor:] When you asked [Appellant] the question[,] "Who shot you?" he didn't answer?
>
> A. No. [Appellant] just screamed like his leg -- he just screamed is the only way I can describe it.
>
> Q. Did [Appellant] mention anywhere in the conversation anything about protecting himself?
>
> A. No.

- 16 -

Q. Did [Appellant] mention anything about anybody he saw on the block that day regardless of whether or not they shot him?

A. No, he did not.

Q. Did [Appellant] say anything about people he recognized on the block that day?

A. No, he did not.

Q. Did [Appellant] tell you, "Look, I have a gun?"

A. No, he did not say that.

Q. Did [Appellant] tell you, "Hey, I saw these guys with guns?"

A. No, he did not.

Q. Did [Appellant] make any mention to you at all in any way that he got that gunshot wound because he was protecting himself?

[Trial Counsel]: Objection.

THE COURT: Overruled.

Q. [The prosecutor:] I'm sorry. What was the answer?

A. No.

Q. Eventually medics transported [Appellant]?

A. Yes.

Q. Did that end your interaction with [Appellant]?

A. Yes.

N.T., 1/6/16, at 91-93.

"Both the Fifth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution protect an individual's right not to be compelled to be a witness against himself." ***Commonwealth v.***

***Adams***, 39 A.3d 310, 316 (Pa. Super. 2012) (citation omitted); ***see also***

***Commonwealth v. Molina***, 33 A.3d 51, 62 (Pa. Super. 2011) (*en banc*)

("hold[ing] that the Commonwealth cannot use a non-testifying

defendant's pre-arrest silence to support its contention that the defendant

is guilty of the crime charged[,] as such use infringes on a defendant's right

to be free from self-incrimination."). However, "**mere reference to a**

**defendant's silence does not necessarily impinge constitutional rights**

**when guilt is not implied.**" ***Commonwealth v. Adams***, 104 A.3d 511,

517 (Pa. 2014) (emphasis added).

Instantly, Appellant maintains Officer Brendlmaier's "testimony was

elicited as part of the sequence portraying Appellant as non-cooperative,

implying guilt amid a defense theory of justification[.]" Appellant's Brief at 18

(record citation omitted); ***see also id.*** (asserting this improper testimony

"impl[ied] evasion and consciousness of guilt"). Additionally, Appellant claims

he has satisfied all three prongs of the IAC test with respect to this claim, as

(1) the underlying claim is meritorious; (2) "[Trial] Counsel had no reasonable

basis for failing to object timely"; and (3) "[p]rejudice is clear," where "the

silence evidence bolstered the Commonwealth's narrative, [and]

undermin[ed] the defense." ***Id.*** at 18-19.

In its opinion, the PCRA court found Appellant's claim of Trial Counsel's

IAC lacked arguable merit and caused Appellant no prejudice:

> Appellant is [] unable to establish [his IAC claim] as [] Trial
> Counsel was not ineffective in how [he] handled references to the

Appellant's pre-arrest silence. [**Trial Counsel**] **objected multiple times and was overruled.**

Additionally, [**the trial**] **court cured any prejudice that may have come from the Commonwealth's reference to Appellant's pre-arrest silence by issuing a curative instruction to the jury**, [at the request of Trial Counsel immediately after the parties' closing arguments,[9]] informing them that Appellant had no obligation to say anything to the police, and that he constitutionally had the absolute right to remain silent.[10]

_____

[9] During the Commonwealth's closing argument, the prosecutor, referencing Officer Brendlmaier's above-described testimony, stated as follows:

> [U]nlike [Dickens], when [Appellant was] asked who was shooting, [and] did you see anything? [Appellant] just goes, "Ah, my leg. I'm in pain." When presented the opportunity not once, but twice[,] to try to say anything about this being a self-defense case, [Appellant] said --
>
> [Trial Counsel]: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> [The prosecutor]: -- the only thing [Appellant] ever said to police at that time was "They left the gun there." And "Ah, my leg."

N.T., 1/11/16, at 49; *see also id.* at 62-63 (Trial Counsel renewing the objection at sidebar). Trial Counsel did not move for a mistrial.

[10] The trial court's curative instruction stated as follows:

> A person accused of a crime is not required to present evidence or prove anything in his own defense.
>
> There was an objection during the Commonwealth's closing, and whatever the evidence was that was said by … [Appellant] to the police, it is [the jury's] recollection that controls. However, [Appellant] has no obligation to say anything to the police.

*(Footnote Continued Next Page)*

As previously mentioned, the evidence in this case was strong enough that Appellant cannot establish that he was prejudiced such that the outcome of his trial would have been different [had Trial Counsel responded differently to Officer Brendlmaier's testimony].

\* \* \*

**The evidence was so overwhelming against Appellant that any prejudice that may have come from [Officer Brendlmaier's] mention of pre-arrest silence is not nearly strong enough to support that the outcome of the trial would have been different if this mention of pre-arrest silence was not permitted.**[11]

[] Trial Counsel was not ineffective for failing to timely object to the Commonwealth's inquiries [pertaining to Appellant's] pre-arrest silence, because [Trial Counsel] did, in fact, raise objections. **While [the trial] court overruled his objections, [] Trial Counsel did raise objections during Officer Brendlmaier's testimony and during the Commonwealth's closing argument.** [The trial] court cured any potential prejudice by reading curative instructions to the jury prior to deliberation.

Lastly, given the strength of the evidence against Appellant, Appellant cannot prove that he was prejudiced such that the outcome of the trial would have been different. [The PCRA] court determines that Appellant cannot establish ineffective assistance of counsel for failing to timely object to the Commonwealth's inquiries of the Appellant's pre-arrest silence. Accordingly, Appellant's claim is without arguable merit and no relief is due.

_____

N.T., 1/11/16, at 75; **see also id.** at 67-68 (Trial Counsel's request for a curative instruction). It is well established that a jury is presumed to follow a trial court's instructions. **Commonwealth v. Speight**, 854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions.")

[11] This Court has stated that where "the evidence of guilt is overwhelming, counsel's purported ineffectiveness fails the prejudice prong" of the IAC test. **Commonwealth v. Bishop**, 936 A.2d 1136, 1140 (Pa. Super. 2007) (citation omitted).

PCRA Court Opinion, 7/8/25, at 10-12 (emphasis and footnotes added; citations, capitalization, and punctuation modified).

Our review confirms the PCRA court's foregoing analysis is supported by the law and the record, and we agree with its legal conclusion. ***See id.*** The PCRA court did not err or abuse its discretion in denying relief on Appellant's claim of Trial Counsel's IAC related to Officer Brendlmaier's testimony. Appellant's second issue merits no relief.

In his third issue, Appellant contends the PCRA court improperly denied relief on his IAC claim related to Direct Appeal Counsel. Appellant claims Direct Appeal Counsel unreasonably failed to challenge, on direct appeal, the admission of Officer Brendlmaier's testimony purportedly referencing Appellant's pre-arrest silence. ***See*** Appellant's Brief at 20-21. Appellant maintains this claim meets each of the three prongs of the IAC test. ***See id.***

Our Supreme Court has explained that to establish a "stand-alone" claim of ineffective assistance of appellate counsel, "a PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal." ***Commonwealth v. Koehler***, 36 A.3d 121, 142 (Pa. 2012). To obtain relief on such a claim,

> the PCRA petitioner must show exactly how appellate counsel was ineffective, by offering additional evidence or controlling authority, missed by direct appeal counsel, that would have changed the appeal outcome; or by specifically alleging the winning claim or distinct legal theory that appellate counsel failed to recognize; and then by showing how the appeal, as pursued, was incompetent by comparison[.]

*Id.* (internal citation omitted). Finally, to establish a claim of appellate counsel's ineffectiveness, a petitioner must still prove each of the three prongs of the IAC test. *Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004).

Instantly, as we have already determined there is no arguable merit to Appellant's underlying claim of trial court error in admitting the above-described testimony of Officer Brendlmaier, Appellant's claim of Direct Appeal Counsel's IAC, predicated upon this alleged error, necessarily fails. *See Treiber*, 121 A.3d at 445 (counsel cannot be deemed ineffective for failing to raise a meritless claim); *see also* PCRA Court Opinion, 7/8/25, at 12 (concluding that "[Direct Appeal] Counsel cannot be deemed ineffective" for failing to raise on direct appeal an underlying claim that is "without arguable merit."). Accordingly, Appellant's third issue merits no relief.

In his fourth and final issue, Appellant asserts he is entitled to relief on his claim of Trial Counsel's IAC for failing to move for a mistrial, based on the prosecutor's improper and prejudicial remark during closing argument that referenced Appellant's pre-arrest silence. *See* Appellant's Brief at 21-22. Appellant briefly avers, with little elaboration, that this claim meets all three prongs of the IAC test. *Id.*

Preliminarily, Appellant's argument on this issue is minimally developed, consisting of merely half a page of argument. *Id.* Although Appellant sparingly cites to a few authorities, and briefly references each of the three prongs of the IAC test, his argument fails to appropriately elaborate upon his

bald claim. *See id.* On this basis, we could deem Appellant's claim waived. *See Commonwealth v. Armolt*, 294 A.3d 364, 379 (Pa. 2023) (stating that "mere issue spotting without sufficient analysis or legal support precludes appellate review."); *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 884-85 (Pa. Super. 2019) ("When an appellant's argument is underdeveloped, we may not supply it with a better one. In such situations, we shall not develop an argument for an appellant …; instead, we will deem the issue to be waived." (citation, quotation marks, and brackets omitted)); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) ("Arguments not appropriately developed are waived." (citations omitted)). Nevertheless, we decline to find waiver and address the merits of Appellant's claim.

"In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citation and quotation marks omitted); *see also Commonwealth v. Laird*,

988 A.2d 618, 638 (Pa. 2010) (emphasizing that a mistrial is an extreme remedy).

Significantly, "a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Johnson*, 107 A.3d 52, 53 (Pa. 2014); *Commonwealth v. Leap*, 222 A.3d 386, 392 (Pa. Super. 2019) (same). "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Spotz*, 18 A.3d 244, 296 (Pa. 2011) (citation omitted).

Instantly, in its opinion, the PCRA court concisely addressed Appellant's IAC claim as follows:

> Trial Counsel was not ineffective for failing to request a mistrial after the Commonwealth briefly referenced [] Appellant's pre-arrest silence in closing arguments. As noted, Trial Counsel had timely objected to the Commonwealth's statements in closing arguments. Further, [the trial] court's curative instruction to the jury effectively mitigated any potential risk of prejudice that could have ar[isen] from the Commonwealth's reference to Appellant's pre-arrest silence.
>
> Moreover, the evidence in this case was strong enough that Appellant cannot establish that the outcome of his trial would have a reasonable probability of greater potential for success if [] Trial Counsel [had] requested a mistrial. Accordingly, Appellant's claim that Trial Counsel was ineffective for failing to request a mistrial during closing arguments is without merit and no relief is due.

PCRA Court Opinion, 7/8/25, at 13-14 (some citations and capitalization modified).

Our review confirms the PCRA court's analysis is supported by the law and the record, and its legal conclusion is sound. *See id.* We conclude the

PCRA court did not err or abuse its discretion in denying relief on Appellant's claim of Trial Counsel's IAC for not requesting a mistrial. Appellant's final issue merits no relief.

Based upon the foregoing, we discern no abuse of discretion or error of law in the PCRA court's dismissal of Appellant's first PCRA petition without a hearing. Therefore, we affirm the PCRA court's October 25, 2023, dismissal order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/13/2026